UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


CHAD MICHAEL RAGER,

      Petitioner,

v.                                 Case No. 3:19cv740-LC-HTC

MARK S INCH,

      Respondent.

_____/

## ORDER and REPORT AND RECOMMENDATION

Petitioner, Chad Michael Rager, proceeding *pro se*, filed an amended petition under 28 U.S.C. § 2254, ECF Doc. 12, challenging his conviction in the circuit court of Escambia County, Florida. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After the State's response (ECF Doc. 18) and Petitioner's reply (ECF Doc. 21), Petitioner filed a motion for summary judgment on Grounds 1 and 3 of his Amended Petition (ECF Doc. 24) and later moved the Court to rule in his favor on his motion for summary judgment without a response by the State after the time for responding expired (ECF Doc. 26). For the reasons which follow, the undersigned recommends the motions relating to summary judgment be DENIED, and the Petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND

### A.    Offense and Conviction

Rager was convicted after a jury trial of sexual battery of a person aged 12 to 17; lewd or lascivious battery of a person aged 12 to 15; lewd or lascivious conduct with a person under age 16; and unlawful sexual activity with a minor.  ECF Doc. 18-2.  The victim was Rager's adopted daughter.[1]  The state court sentenced Rager to 25 years on Count 1 and 15 years each on Counts 2, 3 and 5, each to run concurrently with Count 1.  ECF Doc. 18-15 at 207-08 (Judgment).  It is this Judgment from which Rager seeks relief.

### B.    Postconviction Procedural History and Timeliness

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas relief must be filed within one-year limitations of certain "trigger" dates.  28 U.S.C. § 2244(d)(1).  For purposes of Rager's petition, the applicable trigger date is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review".  28 U.S.C. § 2244(d)(1)(A).  Additionally, the limitations period is tolled for the time during which a "properly filed" postconviction motion is pending in state court.  *Id.* § 2244(d)(2).  The Secretary does not dispute the petition was timely filed, and the undersigned agrees.

---

[1] The victim was originally Rager's stepdaughter, but he later adopted her.  ECF Doc. 18-15 at 32.

Rager appealed his conviction with the First District Court of Appeal ("First DCA"), case number 1D11-4132, and the Court affirmed without written opinion on November 27, 2012. ECF Doc. 18-8 at 4. Rager did not move for rehearing or seek review in the United States Supreme Court. Therefore, his conviction became final ninety (90) days later, February 25, 2013. *See Bond v. Moore*, 309 F.3d 770, 773–74 (11th Cir. 2002) (state prisoner's conviction becomes final when the U.S. Supreme Court denies certiorari, issues a decision on the merits, or when the 90-day period to file a petition for certiorari expires).

The AEDPA limitations period ran for 156 days until August 1, 2013, when Rager filed a petition alleging ineffective assistance of appellate counsel with the First DCA, case number 1D13-3704. The First DCA denied the petition without written opinion and denied the motion for rehearing on May 23, 2014. ECF Doc. 18-11 at 2014. The AEDPA time ran for another 102 days (total: 258 days), until September 3, 2014, when Rager filed his original motion under Fla. R. Crim. P. 3.850. ECF Doc. 22-5 at 1 ¶ 4. That motion, after an amendment, was continuously pending until the First DCA affirmed without written opinion and issued its mandate on February 19, 2019, case number 1D17-3672. ECF Doc. 18-20.

Meanwhile, Rager also filed a petition for writ of habeas corpus in the First DCA on April 18, 2018, 1D18-1681, which was continuously pending until September 13, 2019, when the First DCA denied the petition without written

opinion. Thus, the AEDPA remained tolled until September 13, 2019. Because Petitioner filed the instant federal petition on April 16, 2019, while the AEDPA time remained tolled, the petition is timely.

## II.    DISCUSSION

Rager raises eight (8) grounds for relief and moves for summary judgment specifically on grounds 1 and 3. For purposes of judicial efficiency, the undersigned reviewed and considered all the grounds and finds none of them warrant relief. The grounds raised are either procedurally barred or lack merit. Each ground is discussed below.

### A.    <u>Ground One</u>: **Trial Court Error in Allowing Conviction After Statute of Limitations Expired**

In Ground One, Rager argues the trial court erred in allowing his conviction to stand on Counts 2, 3, and 5, even the State did not prosecute those counts until after the three-year statute of limitations had expired. Additionally, Rager argues he did not waive the defense as it can be waived only by an express, personal waiver. ECF Doc. 12 at 9-10. The Secretary argues Ground One is procedurally defaulted because Rager did not raise it on direct appeal. The undersigned agrees.

1.    <u>Rager Procedurally Defaulted Ground One Because the State Court Denied Petitioner's Claim on an Adequate and Independent State Procedural Ground</u>

Petitioner did not raise the statute of limitations defense at his trial in April 2011, in his motion for new trial filed in May 2011, ECF Doc. 18-4, in his brief on

direct appeal in February of 2012, ECF Doc. 18-4 at 3, or in his *pro se* petition alleging ineffective assistance of appellate counsel in August 2013, ECF Doc. 18-9. Instead, Rager first raised this ground for relief as Claim One of the 3.850 motion he filed on September 3, 2014[2]. The state court denied relief, finding the claim to be procedurally barred because it was not raised at trial or on direct appeal. ECF Doc. 18-15 at 7.

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed "to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9-10 (2012). These rules include the doctrine of procedural default, under which "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Id.*

The Eleventh Circuit utilizes a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state

---

[2] That motion was first amended by Petitioner, and the amended petition was stricken by the circuit court without prejudice to amend as exceeding the page limit, *see* ECF Doc. 18-12 at 2. Petitioner filed a final version on April 23, 2015 which is attached as an exhibit to this report and recommendation.

court rendering judgment must clearly and expressly state it is relying on a state procedural rule to resolve the federal claim. *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *Id.* Third, the state procedural rule must be adequate. *Id.*

In denying relief, the state circuit court cited *Ponton v. State*, 971 So. 2d 813 (Fla. 3d DCA 2007); *Swanson v. State*, 984 So. 2d 629 (Fla. 1st DCA 2008); and *Hughes v. State*, 22 So. 3d 132 (Fla. 2d DCA 2009) as the basis for its decision. In each of those cases, the courts held that under Fla. R. Cr. P. 3.850 "claims of judicial error could have and should have been raised on direct appeal and are therefore procedurally barred." *See Ponton*, 971 So. 2d at 814; *see also, Swanson*, 984 So. 2d at 629; *Hughes*, 22 So. 3d at 135. Because the First DCA affirmed the denial of the 3.850 motion without written opinion, ECF Doc. 18-20, this Court will look to the state circuit court written order as providing the basis for the denial. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).[3]

---

[3] This court presumes the First DCA's rejection of Rager's claim without written opinion rested on the same procedural bar that the lower court imposed. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.... [W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.") (citation omitted); *see also Richter*, 562 U.S. at 99-100 (citing *Ylst* as an example where the presumption of a merits adjudication is overcome).

Rager does not dispute the first two parts of the *Judd* test are met, namely that the circuit court relied upon a Florida procedural rule, Rule 3.850, in denying relief, and the circuit court did not intertwine the procedural ruling with the merits of the federal constitutional issue as the reason for denying relief.  Instead, Rager takes issue with the third requirement -- the adequacy of the state procedural rule.  The adequacy requirement has been interpreted to mean the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd*, 250 F.3d at 1313, or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

Rager argues the rule in his case -- that trial court error claims based on the expiration of the statute of limitations must be raised on direct appeal -- was not "firmly established and regularly followed" by Florida courts.  ECF Doc. 22 at 17. Specifically, Rager argues that, although the general rule is that a motion for postconviction relief cannot be "based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence," Fla. R. Crim. P. 3.850(c), some Florida courts have held that statute of limitations challenges can be raised during 3.850 proceedings.  *See* ECF Doc. 22 at 18-19 (citing *Morgan v. State*, 888 So. 2d 128 (Fla. 3d DCA 2004); *Torgerson v.*

*State*, 964 So. 2d 178, 178-79 (Fla. 4th DCA 2007); and *Riviere v. State*, 965 So. 2d 845 (Fla. 2d DCA 2007)).

However, the cases cited by Rager are distinguishable and "do[] not significantly undermine a conclusion that the rule is firmly established." *See Coughlin v. Sec'y, Dep't of Corr.*, 458 F. App'x 786, 787–88 (11th Cir. 2012) (citing *Dugger v. Adams*, 489 U.S. 401 (1989) (concluding that a state procedural rule was applied "consistently and regularly" when the state supreme court had applied the rule in "the vast majority of cases" and when the few cases petitioner cited were distinguishable)).  None addresses the specific question before the Court.

The *Lane* and *Torgerson* cases deal with which version of the statute of limitations applied – the one in effect at the time of the offense versus the one in effect at the time of conviction; *Tucker* deals with whether the defendant could waive the statute of limitations for lesser included offenses so that the lesser included offenses could be included in the jury instructions along with a death-sentence-eligible greater offense; *Johnson* addresses whether *Giglio* claims could be raised for the first time in a post-conviction motion; and *Morgan* and *Riviere* deal with whether statute-of-limitations claims must be brought under Florida Rule of Criminal Procedure 3.850 instead of 3.800.  Each of these cases is distinguishable and does not undermine the rule that trial court error claims must be brought on direct appeal.

The *Hughes* case comes closest to supporting Rager's position but still does not undermine the application of the direct-appeal rule in this case. In *Hughes*, the Fourth DCA reviewed the "loose" use of the term "fundamental error" by Florida courts and addressed Hughes' "argument that a fundamental error can be raised at any time." 22 So. 2d at 134. While the *Hughes* court acknowledged that "some errors, which have also been referred to as 'fundamental errors,' are so serious that they amount to a denial of substantive due process and may be raised *at any time* including for the first time in a postconviction motion,'" neither the *Hughes* court nor any of the cases cited by *Hughes* involved a statute of limitations claim. Instead, *Hughes* involved the wording of the indictment and the other cases cited involved Double Jeopardy, a facially unconstitutional statute, or a conviction for a non-existent crime.

On the other hand, Florida courts have consistently held that the statute of limitations necessarily cannot be considered "jurisdictional," at least not in the sense of depriving the trial court of subject-matter jurisdiction. *See Rodriguez v. State*, 441 So.2d 1129 (Fla. 3d DCA 1983) (holding that the statute of limitations defense does not deprive court of subject matter jurisdiction; to the extent the statute of limitations may be considered in any sense a jurisdictional impediment, it is one which can be waived); *Farrar v. State*, 42 So.3d 265, 265 (Fla. 5th DCA 2010) (observing that "[s]tatutes of limitations on crimes are not jurisdictional and may be

waived"); *Lowe v. State*, 501 So.2d 79 (Fla. 5th DCA 1987) (noting that "[i]n Florida, statutes of limitations on crimes do not limit the jurisdiction of courts to try criminal charges."). Therefore, although courts have held that claims the trial court lacked subject matter jurisdiction can be raised at any time, statute of limitations claims in Florida do not fall into that category.

Also, Rager cites no federal case finding the Florida rule inadequate as applied to statute-of-limitation claims, and "[t]he adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide; rather, adequacy 'is itself a federal question.'" *Cone v. Bell*, 556 U.S. 449, 465–66 (2009) (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965)). In contrast, courts in the Eleventh Circuit have consistently held that under Florida law, "[i]ssues that could have been raised on direct appeal but were not are noncognizable claims through collateral attack" and therefore are procedurally barred from review in a state post-conviction proceeding. *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001).

Rager has therefore not shown that the state courts applied the procedural bar in an "arbitrary or unprecedented fashion," *Judd*, 250 F.3d at 1313, or in a manifestly unfair manner. *See Ford*, 498 U.S. at 424-25. Therefore, the state post-conviction court applied an adequate and independent state procedural rule, and the federal

court must defer to the state court's procedural ruling and find that Petitioner procedurally defaulted this claim.

> 2.   Rager Cannot Show Either Cause and Prejudice or a Fundamental Miscarriage of Justice

A federal court cannot reach the merits of a procedurally defaulted claim unless the petitioner shows either: (1) "cause" for the default and resulting "prejudice"; or (2) that failure to review the claim will result in a "fundamental miscarriage of justice." *Spencer v. Sec., Dep't of Corr.*, 609 F.3d 1170, 1179-80 (11th Cir. 2010). "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (quotation marks and citation omitted). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Id.* at 892 (citation omitted).

Rager cannot show either cause or prejudice. Rager argues his appellate counsel's ineffective assistance was the cause for his failure to raise the claim on direct appeal. ECF Doc. 22 at 20. While an attorney's error during an appeal on direct review may provide cause to excuse a procedural default, *Coleman v. Thompson,* 501 U.S. 722, 754 (1991), it does not for Rager because he had the chance to raise an ineffective assistance of appellate counsel claim in his *pro se*

petition alleging other claims of ineffective assistance of appellate counsel and did not do so.  Therefore, Rager has not shown "cause" for his procedural default.

To show prejudice, a petitioner must demonstrate not only that an error created the possibility of prejudice but that the error worked to his actual and substantial disadvantage and infected the entire conviction with error of constitutional dimension.  *United States v. Frady*, 456 U.S. 152 (1982).  In other words, a petitioner must show at least a reasonable probability of a more favorable outcome.  *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).  Petitioner must show had trial or appellate counsel (which was the same person) raised this issue, raising it would have resulted in at least a reasonable probability of a more favorable outcome.

As discussed next with regard to Ground Two, however, there is not a reasonable probability that raising the statute of limitations argument before, during or after trial would have resulted in a more favorable outcome.  That is because, even if the state court threw out the three counts on statute of limitations grounds, the State would have been free to replace those counts with more severe counts that were supported by the evidence in the case.

Finally, Rager cannot show that his conviction resulted in a fundamental miscarriage of justice.  A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the

conviction of someone who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.  *Schlup*, 513 U.S. at 327.

Rager does not even argue he is actually innocent, nor could he make such a showing.  According to the victim's testimony at trial, "[s]exual stuff started happening" with Rager when she was "about 14, 15 years old."  ECF Doc. 18-15 at 41.  The conduct continued for several years until after Petitioner was 18 years old. *Id.* at 55-57.  Also, during a recorded call with the victim, after the sex had stopped, which was admitted into evidence, Rager admitted to having sex with the victim, ECF Doc. 18-15 at 162, and, when the victim stated, "all that stuff started happening when I was like, what like 14 whatever and I mean, we just have a different kind of relationship," Rager corrected her and stated, "Yeah, I think it was 15."  *Id.* at 72. He continued, "Yeah, because you started hanging out with me like you were 13 or 14 but, you know, nothing went down for a long time."  *Id.* at 73.  Later, she asked Rager, "Did you ever feel like guilty about what happened because I was so young or no?" and Rager answered, "Yeah, I did."  *Id.* at 77.  In other words, there was sufficient evidence to convict Rager.

**B.**     <u>Ground Two</u>**: Ineffective Assistance of Trial (IATC) and Appellate Counsel (IAAC) Relating to the Statute of Limitations Defense**

As mentioned above, in Ground Two Rager argues counsel was ineffective for failing to raise the statute of limitations defense at trial and on appeal (Rager had the same counsel at both phases). The Secretary admits Rager exhausted the IATC claim by raising it in the 3.850 motion but argues the claim fails on the merits. The Secretary argues, however, that the IAAC claim is procedurally defaulted.

1.     <u>Rager's IATC Claim Fails on the Merits</u>

Rager argues trial counsel failed to raise the statute of limitations defense at trial or in a posttrial motion because counsel was "operating under a misconception that a statute of limitations defense is waived if not raised before trial" and that counsel did not research the issue and refused to raise the argument even though Rager presented case law showing the issue could have been raised at trial or during a posttrial motion. ECF Doc. 22 at 24-29. The record shows, however, as determined by the state circuit court, that counsel made a strategic decision not to raise the statute of limitations issue. Specifically, counsel knew that by doing so, he risked the very real possibility the State would amend the information to add additional felony counts, carrying greater sentences. Thus, under *Strickland v. Washington*, 466 U.S. 668 (1984)*, the state courts correctly decided this issue.

As stated above, Rager raised this IATC claim in the amended 3.850 motion. The state court held an initial evidentiary hearing in August 2016, where trial counsel

testified he had, in fact, investigated the statute of limitations defense but advised

Rager they should not raise the statute of limitations defense because it could expose

Rager to greater charges in an amended information:

> Based upon my discovery in the case, I didn't understand why the State had charged the way the State had charged. I -- I felt it was Mr. Rager's good fortune that they had, because they only brought one first degree felony.
> And, nonetheless, I -- I had taken the deposition of [the daughter] and I knew if they wanted to get real clear and -- and specific, they could have brought a number of different first degree felony charges against Mr. Rager.
> So, it, quite frankly, didn't make sense to me to trade second degree felonies -- two of which were not guilties, by the way -- for first degree felonies.
>
> * * * *
>
> Well, Mr. Rager, if -- just raising the motion or according to what you -- you understand *Tucker* to mean, in terms of going before the Court to get a waiver presented on the record of the statute of limitations, just alerting the State to potential issues regarding that, even without a motion to dismiss is such as to invite them to amend the information and bring those charges. So if indeed there is a strategic error on my part the Court finds, so be it. I guess you'll benefit from that.
> But, nonetheless, to raise in any way the statute of limitations as to those -- those four counts would have been a red -- an alert -- red alert for the State to correct the information as I've just indicated.

ECF Doc. 18-14 at 19 (Exh. V, transcript of Aug. 16, 2016 evidentiary hearing).

Confirming counsel's concerns, the state prosecutor testified at the August 2016

evidentiary hearing that, if defense counsel had filed a motion to dismiss based on

the statute of limitations, he would have increased the charged offenses. *Id.* at 46.

The trial court orally denied relief on the statute-of-limitations claims during the August 2016 evidentiary hearing and stated "there will be a written order forthcoming." *Id.* at 56-58. However, instead of issuing a written order, the original state court judge recused herself. The new judge assigned the case explained he would consider all the claims in the amended 3.850 motion anew, not bound by the prior judge's rulings. ECF Doc. 18-15 at 5. Thus, he held a second evidentiary hearing, on April 10, 2017, at which Rager, trial counsel and the court engaged in the following colloquy:

> [TRIAL COUNSEL]: Well, Mr. Rager, I knew and we discussed that the statute of limitations had passed on those other counts. And we discussed, as I indicated, my belief that the State of Florida would basically handle that issue by just bringing the charges that were not -- additional charges that were not barred by the statute of limitations up to four, five, maybe six counts which would be more problematic for you than the ones that existed that were time-barred. So for me to have cued the State in to the statute of limitations issue was of concern.
>
> [PETITIONER]: All right.
>
> THE COURT: Can we expand on that since I wasn't the trial judge? Does that mean that they could have gone back and charged more first degree felonies --
>
> [TRIAL COUNSEL]: Yes, sir.
>
> THE COURT: -- than they did?
>
> [TRIAL COUNSEL]: Yes, sir.
>
> THE COURT: Okay. And as a tactical strategy, it was in your client's best interest not to do that because you didn't want him charged with more first degree felonies?

> [TRIAL COUNSEL]: Well, that's what I believed was in his best interest not to be charged with a bunch of more serious felonies than the ones he was charged with especially when two of them ended up being acquittals.

Attachment 2 to this order at 44 (Exhibit W containing transcript of hearing, originally filed under seal).

The second judge denied all the claims in the amended 3.850 motion by written order. ECF Doc. 18-15 at 2. As to the ineffective assistance of trial counsel claim, the judge applied *Strickland* and found trial counsel's choice was a reasonable strategic decision that was ultimately successful. *Id.* at 11-12. Because the First DCA did not enter a written opinion, this Court will "look through" the First DCA decision to the circuit court's written order as providing a relevant rationale and presume that the unexplained appellate decision adopted the same reasoning. *See Wilson*, 138 S. Ct. at 1192.

In doing so, the undersigned finds Rager has not rebutted the presumption of correctness to which the trial court's factual determinations are entitled, and the state court's legal conclusions are not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). Rager has offered nothing but his own self-serving statements – much less clear and convincing evidence -- to contradict the trial court's factual

determination, after an evidentiary hearing, that counsel considered, researched and rejected the statute of limitations defense for strategic reasons.

First, the state's factual determination – that counsel investigated the statute of limitations claim and declined to raise the statute of limitations for strategic reasons rather than due to a lack of knowledge of the law – should not be disturbed. A state court's factual determinations are presumed correct, and a petitioner has the burden of rebutting that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A federal habeas court may grant relief only if "in light of the evidence presented in the state court proceedings, no reasonable jurist would agree with the factual determinations upon which the state court decision is based." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 948–49 (11th Cir. 2016). In particular, "[d]etermining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing *Marshall v. Lonberger,* 459 U.S. 422 (1983)).

Second, the state court's decision, that counsel's performance was not deficient and that Rager was not prejudiced by the strategy, was neither contrary to nor an unreasonable application of clearly established Supreme Court law. In

*Strickland,* the Court set forth a two-pronged test, requiring petitioner to show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different), to succeed on an ineffective assistance of counsel claim. *Strickland,* 466 U.S. at 688.

Counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. The deficient performance prejudiced the defendant only if the reasonable probability of a different result rises to a level that is "sufficient to undermine confidence in the outcome." *Id.* at 694. To prevail on a claim of ineffective assistance of counsel, both parts of the *Strickland* test must be satisfied. *Bester v. Warden, Att'y Gen. of the State of Ala.*, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). However, a court need only address one prong, and if it is found unsatisfied, the analysis ends. *Id.*

Additionally, a state court's adjudication of an ineffectiveness claim is accorded great deference. *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014); *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (*"*the standard for judging counsel's representation is a most deferential one"). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard

was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted). As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Here, the state court's determination was not only reasonable, but it was correct. The record clearly shows that trial counsel's decision was made after a full investigation and understanding of the statute of limitations issue. Such decisions are "virtually unchallengeable." *Strickland*, 466 U.S. at 690 (defense counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); *see also Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1302 (11th Cir. 2019) ("It is especially difficult to succeed with an ineffective assistance claim questioning the strategic decisions of trial counsel who were informed of the available evidence."). Thus, the state court was correct in concluding Rager had not shown counsel's performance was deficient.

Likewise, the state court was correct and reasonable in concluding Rager had not shown he was prejudiced by counsel's performance. In Counts 2 and 3, Rager was charged with violating Florida Statutes § 800.04(4) and (6), respectively, and in Count 5, he was charged with violating Florida Statutes § 794.05. Violations of these statutes are second-degree felonies for which the statute of limitations is three

(3) years under Florida Statutes § 775.15(2)(b). However, Florida Statutes §775.15(13)(a) extends the date on which the statute of limitations began running on a second-degree felony offense involving a victim who was under the age of 18 when the offense occurred. The time period does not begin running until the victim has reached the age of 18 or the violation is reported to a law enforcement agency or other governmental agency, whichever occurs earlier. The victim in this case did not report the crime until after her eighteenth birthday, so the limitations period began running on that date, June 22, 2007, ECF Doc. 18-15 at 32, and expired on June 22, 2010.

Rager was charged by Information filed on October 11, 2010. *See* attached docket from Escambia County Case Number 2010-CF-4281A. Under Florida Statutes §775.15(5)(a), "[p]rosecution on a charge on which the defendant has previously been arrested or served with a summons is commenced by the filing of an indictment, information, or other charging document." The filing of the information occurred on October 11, 2010, which was more than three years after the victim's eighteenth birthday. Rager, therefore, could have successfully asserted a statute of limitations defense.

His counsel, however, made a strategic decision not to do so because it would have allowed the State to amend the information to include additional felony defenses. Thus, if the statute of limitations defense had been raised, Rager would

likely have faced significantly harsher charges.  For first-degree felony violations of
Florida Statutes Section 794.011 where the victim was under 18 years of age at the
time the offense was committed, "a prosecution of the offense may be commenced
at any time."  Fla. Stat. § 775.15(13)(b).  Thus, no statute of limitations applied to
such offenses.

Trial counsel indicated he knew from the victim's deposition the State could
likely charge first-degree felonies that would not be barred by a statute of limitations
and which would increase Petitioner's sentence exposure.  In fact, in Count 1, Rager
was charged with violating Fla. Stat. § 794.011(8)(b), which makes it a first-degree
felony for person in "a position of familial or custodial authority to a person less
than 18 years of age" "[w]ithout regard to the willingness or consent of the victim"
engage "in any act with that person while the person is 12 years of age or older but
younger than 18 years of age which constitutes sexual battery under paragraph
(1)(h)."  Sexual battery is defined as "oral, anal, or vaginal penetration by, or union
with, the sexual organ of another or the anal or vaginal penetration of another by any
other object."  Fla. Stat. § 794.011(1)(h).  The victim testified at trial about dozens
of instances of vaginal penetration between ages 12 to 18.  ECF Doc. 18-15 at 38-
53.  Therefore, if counsel caused the State to amend its charges, the State could have
picked from literally dozens of first-degree felonies about which the victim could
testify.

2.    Rager's IAAC Claim Was Procedurally Defaulted

As part of Ground Two, Rager also argues counsel was ineffective for failing to raise the statute-of-limitations issue on appeal.  ECF Doc. 12 at 12.  Rager, however, did not exhaust his state court remedies as to this ground.

Before filing a federal habeas petition, a state prisoner must exhaust state court remedies, either on direct appeal or in a state post-conviction motion.  *Reutter v. Sec'y for Dep't of Corr.*, 232 F. App'x 914, 915 (11th Cir. 2007) (citing 28 U.S.C. § 2254(b), (c)).  To exhaust state remedies as to a federal constitutional issue, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before filing a habeas petition.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-44 (1999).  With regard to claims of ineffective assistance of appellate counsel in state court, petitioner must raise the issues in a petition before the District Court of Appeals.[4]  *See, e.g., Wilson v. Jones*, 2018 WL 10609961, at *4 (S.D. Fla. June 20, 2018), *report and recommendation adopted sub nom.*, *Wilson v. Dep't of Corr.*, 2018 WL 10609957 (S.D. Fla. July 31, 2018) ("With respect to claim 5, wherein petitioner alleges ineffective assistance of appellate counsel for several reasons, Petitioner did

---

[4] In Florida, a claim of IAAC is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken.  *See* Fla. R. App. P. 9.141(d); *Davis v. State*, 875 So.2d 359, 372 (Fla. 2003). Here, Petitioner did not present this claim of IAAC to the First DCA, and the limitations period set forth in Rule 9.141(d)(5), two years, has expired.

not sufficiently raise these same specific reasons in his petition for writ of habeas corpus filed in the Fourth DCA. As a result, these claims were not properly exhausted in the state trial court and are procedurally barred." (citation omitted)).

Here, Rager filed a petition in the First DCA asserting ineffective assistance of appellate counsel, but only raised two issues: (1) failure to argue fundamental error in the jury instructions and (2) failure to preserve a sentencing error based on an allegedly erroneous scoresheet.  Attachment 3 to this document at 4 & 8 (Exhibit M in state record, originally filed under seal).  The claim that appellate counsel should have raised the claim of trial court error based on the statute of limitations was not presented in the petition before the First DCA or anywhere else before the courts of the State of Florida.  Therefore, the ineffectiveness of appellate counsel claim has not been exhausted.  Because the time for filing such a petition in state court has expired, the claim is now procedurally defaulted.  *See O'Sullivan*, 526 U.S. at 843-44.

Also, Rager cannot invoke any cause and prejudice or fundamental miscarriage of justice exception because, as set forth above, trial counsel was not ineffective for raising this claim and, thus, appellate counsel could not have been ineffective for failing to raise this claim.  In other words, for the same reasons the claim would have been denied on the merits at the trial level, the claim would have been denied at the appellate level.

**C.    Ground Three: Rager's Conviction on Count One Was Unconstitutional Because Jurors Were Not Required to Unanimously Agree on All the Essential Elements of the Offense.**

The Amended Information charged Petitioner in Count One with violating Fla. Stat. § 794.011(8)(b) "by the penetration of the [mouth, anus or vagina] of said victim with the penis of said defendant." ECF Doc. 18-1 at 2.  Notably, the Amended Information did not include language from the statute allowing conviction for "*union with*" the victim's mouth, anus or vagina by his penis.  *Id.*

On the other hand, the jury instructions allowed proof of the offense either through "penetration" or "union." ECF Doc. 18-3 at 2.  It required the State to prove "Chad Rager committed an act with [the victim] in which the sexual organ of the defendant penetrated or had union with the anus, vagina, or mouth of the victim" and instructed that "union means contact."  *Id.*

The instruction tracks the language of the statute, which makes it a first-degree felony for a person in "a position of familial or custodial authority to a person less than 18 years of age . . . [w]ithout regard to the willingness or consent of the victim" to engage "in any act with that person while the person is 12 years of age or older but younger than 18 years of age which constitutes sexual battery under paragraph (1)(h)."  Sexual battery is defined as "oral, anal, or vaginal ***penetration by, or union with***, the sexual organ of another or the anal or vaginal penetration of another by any other object."  Fla. Stat. § 794.011(1)(h) (emphasis added).

On Count 1 of the verdict form, the jury wrote "Yes" to indicate Rager was "Guilty of Sexual Battery While in a Position of Familial or Custodial Authority." ECF Doc. 18-2 at 2. The jury was also asked to check "Yes" or "No" to the following special interrogatory: "We further find that the Defendant penetrated the vagina and/or anus and/or mouth of [the victim]." *Id.* It appears that the jury filled in, then erased, and eventually left blank, the "Yes" choice on the special interrogatory. The jury also left the "No" choice blank. *Id.* The question was thus left unanswered, but "[t]he jury was not questioned about this deficiency in the verdict." ECF Doc. 12 at 15.

Rager argues this omission rendered his conviction unconstitutional. He contends penetration "was an essential element of Petitioner's Count One charge for sexual battery, as the alternate theory of 'union' was not alleged in the Information." *Id.* at 14. He argues (1) the jury was "never informed or instructed that Petitioner was only charged under a theory of 'penetration'"; (2) the jury instructions did not instruct the jury that they must be unanimous as to which occurred, penetration or union; and so (3) "the record as a whole does not refute the probability that the individual jurors each relied upon different incidents as proof of guilt for Count 1, and . . . were most likely divided on the matter of 'penetration' or 'union.'" *Id.* at 15.

The Respondent argues Rager failed to exhaust this claim by failing to raise it on direct appeal.  ECF Doc. 18 at 26-28.  The Respondent notes Rager raised a similar issue in a motion for new trial but points out that the denial of the motion for new trial on this ground was not raised on direct appeal.  Also, to the extent Rager raised the claim in his amended 3.850 motion, this was not the proper vehicle and the ground is therefore unexhausted and procedurally barred.  The undersigned agrees this claim is procedurally barred.

In its order denying the 3.850 motion, the state court noted, "To the extent the Defendant claims the Court erred in failing to grant a new trial based on the jury being instructed on sexual battery by union or the jury's failure to answer an interrogatory as to Count 1, such a claim is procedurally barred."  ECF Doc. 18-15 at 8.  Therefore, as discussed with respect to Ground One above, the decision of the state court rests on a state law procedural ground that is independent of the federal question and adequate to support the judgment.

In his Amended Petition (ECF Doc. 12) and Reply, Rager does not argue cause and prejudice or a fundamental miscarriage of justice excuses his procedural default.  Regardless, even if he did, for the same reasons discussed under subsection II.A.2., such an argument has no merit.  Therefore, this claim is procedurally barred from federal habeas review.  *See Coleman,* 501 U.S. at 729 (A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court

rests on a state law ground that is independent of the federal question and adequate to support the judgment.'")).

### D.    <u>Ground Four</u>: IATC in Addressing the Jury's Failure to Answer the Special Interrogatory Regarding Penetration as to Count 1

Ground Four is based on the same facts as Ground Three but is couched in terms of IATC.  Rager argues trial counsel was ineffective in raising only a state law argument during his postconviction motion for judgment of acquittal that the court had erroneously instructed the jury, rather than a federal constitutional claim based on *United States v. Gaudin*, 515 U.S. 506 (1995).  According to Rager, trial counsel argued the court's instruction to the jury allowed conviction "if the jury found either 'penetration' or 'union' to be proven, and, therefore, the jury's failure to mark 'penetration' on the verdict form left open the possibility that the jury might have convicted petitioner on the uncharged theory of union."  ECF Doc. 12 at 17.  Rager argues counsel should have, instead, argued (1) "'penetration' was an essential element of Count One that was required to be found proven by the jury beyond a reasonable doubt; (2) the jury's erasure of the mark indicating a finding of penetration indicated that they were not unanimous as to whether penetration or union occurred; and (3) therefore, the jury was not unanimous as to an essential element of the claim.  *Id.* at 17-18.

The Secretary argues Rager failed to exhaust this claim because it was not fairly presented as an ineffective assistance claim in his 3.850 motion.  The Secretary

notes that in Claim Two of that motion, Rager only raised a structural error argument regarding the "penetration" versus "union" issue.  Therefore, argues the Secretary, Rager failed to fairly present the issue as ineffective assistance of counsel.  ECF Doc. 18 at 30-31.

While the undersigned agrees Rager did not fairly present this ineffectiveness argument in Claim Two of the 3.850 motion, the undersigned finds Rager fairly presented it as part of Claim Six in that motion.  In Subclaim 6A, Rager argued that "contrary to the general guiding principles of US v. Gaudin, it is most perplexing that counsel did not recognize that one of his clients most basic constitutional rights was violated.  Counsel did notice that the jury did not make a finding of 'penetration' but did not recognize that 'penetration' was an essential element of the crime, thus requiring that this finding was to be made by a jury only."  Amended 3.850 motion, Exhibit T at 33-34.  Rager then continued by citing *Strickland* and arguing that "Defendant has satisfied the prejudice prong by showing that counsel's lack of investigation did not allow him . . . to raise a proper argument alleging constitutional error under *Gaudin* that would have resulted in an acquittal or a new trial on Count 1."  *Id.* at 34.  This is the same claim being made in Ground Four, and so Petitioner fairly presented the issue to the state court.

Although, as stated above, the state circuit court issued an order denying all grounds for relief raised in the 3.850 motion, the court did not specifically address

this argument in Subclaim 6A. ECF Doc. 18-5 at 12. Because there is no written opinion setting out the state court's reason for denying this ground of relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principle to the contrary." *Harrington*, 562 U.S. at 99. Additionally, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98.

Rager cannot meet that burden because there was a reasonable basis to deny relief. Notably, had counsel raised this argument at trial it would have been rejected. Rager's reliance on *Gaudin* is misplaced.

In *Gaudin*, the court "instructed the jury that, to convict respondent, the Government was required to prove, *inter alia,* that the alleged false statements were material to the activities and decisions of HUD. But, the court further instructed, '[t]he issue of materiality ... is not submitted to you for your decision but rather is a matter for the decision of the court.'" *Gaudin*, 515 U.S. at 508. Thus, the court improperly took the issue of materiality away from the jury even though there was no dispute that materiality was an element of the offense. In affirming the Ninth Circuit's reversal of the defendant's conviction, the Supreme Court held that, "[t]he Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged; one of the elements

in the present case is materiality; respondent therefore had a right to have the jury decide materiality." *Id.* at 511. *Gaudin* is distinguishable from the instant case.

Here, the trial court did not take any elements always from the jury. To the contrary, as set forth above, Rager's jury instructions tracked the language of the offense statute, which allows a conviction if either penetration or union was found, and the jury was so instructed. 18-3 at 2. In other words, the fact that the jury did not answer the special interrogatory regarding whether there was penetration does not take away from the fact that the jury was instructed that on the definition of "sexual battery," that it includes "penetration by, or union with," and that the jury checked "Yes," to a finding of guilt on sexual battery while in a position of familial or custodial authority.

Also, in *Perry v. State*, 10 So. 3d 695 (Fla. 1st DCA 2009), the First DCA rejected the same argument Rager makes here: that unanimity was required by the jury on the particular method of sexual battery on a child. *Id.* at 698 ("Appellant refers to no case precedent, statute, or rule of procedure—and this court has located no such authority—requiring a special verdict form which adds specificity to the statutory definition of sexual battery in order for a jury to find a defendant guilty of committing sexual battery.").

Additionally, in its order denying the renewed motion for judgment of acquittal, the circuit court explained that it was unlikely the jury based its verdict on

a finding of union.   Instead, "[b]y failing to answer the interrogatory, the jury's verdict amounts to a general verdict as to Count 1, and the verdict may be presumed to rest on the elements on which the State actually presented evidence, on which the State based its arguments, and which the Defendant contested at trial."   ECF Doc. 18-4 at 4.   Thus, even had counsel raised the issue at trial, it would have been rejected and counsel cannot be deficient for raising a meritless claim; nor can such failure result in prejudice.   *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (explaining that counsel cannot be deficient for failing to raise a meritless claim); *see Owen v. Sec'y, Dep't of Corrs.*, 568 F.3d 894, 915 (11th Cir. 2009) (stating that failure to raise a meritless claim cannot constitute ineffective assistance).

Finally, to the extent Rager seeks to support his claim of prejudice through assertions about the jury's intent in marking and then erasing the answer in the special interrogatories, such assertions are mere speculations and insufficient to support federal habeas relief.   *See Starling v. Sec'y, Dep't of Corr. State of Fla.*, No. 4:18-CV-175-MW-MJF, 2020 WL 5038795, at *9 (N.D. Fla. Apr. 10, 2020), *report and recommendation adopted sub nom. Starling v. Sec'y, Dep't of Corr. Fla.*, No. 4:18CV175-MW/MJF, 2020 WL 5026545 (N.D. Fla. Aug. 24, 2020) ("Speculation does not satisfy *Strickland*'s prejudice standard.") (citing *Grayson v. Thompson*, 257 F.3d 1194, 1225 (11th Cir. 2001) ("Under the prejudice prong of *Strickland*, it is not enough for the defendant to show the errors had some conceivable effect on the

outcome of the proceeding.")); *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (noting that "mere speculation that the defendant was prejudiced by trial error" is insufficient to warrant federal habeas relief; instead, "the court must find that the defendant was actually prejudiced by the error.").

### D.   Grounds Five and Six: Trial Court Error for Failure to Require Unanimous Verdict and Ineffective Assistance of Trial and Appellate Counsel for Failing to Raise the Trial Court Error Argument

In Ground Five, Rager argues his due process rights were violated because the trial court failed to provide procedural safeguards to ensure the jurors were unanimous about which sexual events in evidence supported which charges.  ECF Doc. 12 at 20.  In Ground Six, Rager argues counsel was ineffective for failing to raise this issue at trial or on appeal.  *Id.* at 24.  The undersigned agrees with the Secretary that Rager has failed to exhaust these claims.

In his direct appeal filed in February of 2012, Petitioner raised only two (2) claims: (1) "The trial court abused its discretion by denying the Appellant a new trial based upon newly discovered evidence" and (2) "The Appellant's constitutional right to privacy and his right to the protection of §934.06, *Florida Statutes* was violated by the admission of the Appellant's tape recorded conversation."  ECF Doc. 18-5 at 3.  As with Ground One, under firmly established and consistently applied Florida law, this due process claim must be raised on direct appeal.  *Allen v. State*, 212 So. 3d 1112, 1113 (Fla. 1st DCA 2017) (holding that a due process claim can be raised

on direct appeal and is procedurally barred from being raised in a postconviction motion) (citing *Carroll v. State*, 815 So.2d 601, 609–10 (Fla. 2002)).

To the extent Rager argues counsel was ineffective for failing to raise this issue on appeal and such ineffectiveness supplies "cause and prejudice" for his default, this claim is without merit. As with Ground One, Rager had the chance but failed to raise this claim of IAAC in his *pro se* petition alleging ineffective assistance of counsel filed in August of 2013. ECF Doc. 18-9. Therefore, as with Ground One, Rager, not counsel, is the cause of the failure exhaust this claim.

Rager has also procedurally defaulted Ground Six. First, in Florida, claims of ineffective assistance of trial counsel must be brought in the initial 3.850 proceeding. *Lucas v. Fla. Dep't of Corr.*, No. 19-14394, 2021 WL 71625, at *3 (11th Cir. Jan. 8, 2021) ("Florida law generally requires ineffective assistance claims to be raised on collateral review and to be raised within two years after the judgment and sentence becomes final.") (citing Fla. R. Crim. P. 3.850(b); *Rigg v. Warden, Blackwater River Corr. Facility*, 685 F. App'x 812, 816 (11th Cir. 2017)). Rager did not raise the this claim in his amended 3.850 motion. *See* Exhibit T, docketed as an exhibit to this Report and Recommendation.

Second, as to the IAAC claim, as noted above, Rager defaulted this claim by failing to raise it in his petition alleging ineffective assistance of counsel in the First DCA in 1D13-3704. "Claims of ineffective assistance of appellate counsel must be

raised by petition for writ of habeas corpus in the appropriate district court of appeal" to be exhausted. *Villalobos v. Inch*, 2020 WL 6550574, at *4 (S.D. Fla. May 28, 2020), *report and recommendation adopted*, 2020 WL 6544701 (S.D. Fla. Nov. 6, 2020) (citing *State v. Dist. Ct. of Appeal, First Dist.,* 569 So. 2d. 439, 442 n.1 (Fla. 1990) (superseded on other grounds by *Baker v. State*, 878 So.2d 1236 (Fla. 2004)).

Rager attempts to rely on *Martinez v. Ryan*, to excuse his lack of exhaustion of the claims in Grounds Five and Six. However, his reliance is misplaced. In *Martinez*, the Court held that where a claim of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding under state law, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez,* 566 U.S. at 17.

Thus, to demonstrate "cause" under *Martinez*, a petitioner must establish: (1) a substantial claim of ineffective assistance of trial counsel; (2) the cause for the failure to raise the claim was lack of postconviction counsel in the initial collateral review proceeding; (3) the state collateral proceeding was the initial opportunity to review the claim; and (4) the state's law requires ineffective assistance of trial counsel claims to be raised in the initial collateral proceeding. *Trevino v. Thaler*,

569 U.S. 413, 423 (2013). A substantial claim is one that has "some merit." *Martinez*, 566 U.S. at 14.

Rager fails to satisfy either the cause or prejudice prongs of *Martinez*. First, as discussed above, Rager could have, but failed to, raise the issue of appellate counsel's failure to raise this issue in his 2013 IAAC petition before the First DCA. *Martinez* applies to the "initial-review collateral proceeding" – in this case the initial 3.850 motion – and not to his second bite of the apple, his IAAC petition. Because a petitioner is not entitled to counsel during such a proceeding, the *Martinez* doctrine does not excuse his failure to raise the IAAC issue in that proceeding.

Second Rager fails to meet the prejudice prong because he does not show his ineffectiveness claims are substantial. That is, even if trial and appellate counsel had raised the issue, the motion would have been denied, and counsel cannot be ineffective for failing to file a meritless motion. Under Florida law, the State charging six separate instances over a period of time does not result in a non-unanimous verdict. Florida caselaw is well-settled that a defendant in a child sexual abuse case may be charged over a time period and that type of offenses may be grouped together when the State is unable to narrow the time frames in which the acts occurred. *See Whittingham v. State*, 974 So. 2d 616 (4th DCA 2008); *See also Dell'Orfano v. State*, 616 So. 2d 33 (Fla. 1993); *Perry v. State*, 10 So. 3d 695, 698 (Fla. 1st DCA 2009) (special verdict denoting the particular method of sexual battery

was not necessary for unanimous verdict).  Therefore, Rager's argument in Ground

Five would have been rejected if raised in trial or in a posttrial motion for judgment

of acquittal or new trial.  As stated above, counsel cannot be ineffective for failing

to pursue such a non-meritorious claim.

     E.    **<u>Grounds Seven and Eight</u>: Brady / Giglio Violations by State Not Disclosing Knowledge of the Victim's Prior Sexual Activities with Minors and IATC for Failing to Develop the Facts to Support a Theory Based on the Non-Disclosed Evidence**

Rager argues in Ground Seven that the State violated *Brady v. Maryland*, 373

U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) by failing to turn

over evidence of the victim's prior sexual relationships that might have exculpated

Rager and by blocking the victim and the prior sexual partners from testifying about

their activities with the victim.  In Ground Eight, Rager argues trial counsel was

ineffective by failing to further develop the facts about this motive to lie after being

made aware of it during depositions.

*Brady* and its progeny "stand for the proposition that the prosecution's

suppression of evidence favorable to the defendant 'violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or

bad faith of the prosecution.'"  *Scott v. United States*, 890 F.3d 1239, 1250 (11th Cir.

2018) (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999) and *Brady*, 373 U.S.

at 87).  Evidence is "material," when "there is a reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would have been

different." *Strickler*, 527 U.S. at 280. (citation and internal quotation marks omitted). No actionable *Brady* violation occurs "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281 (internal quotation marks omitted).

In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court held that when the prosecution solicits or fails to correct known false evidence, due process requires a new trial where "the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Id.* at 154 (ellipsis omitted). *Giglio* error, which "is a species of *Brady* error," exists "when 'the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury.'" *Ventura v. Att'y Gen.*, 419 F.3d 1269, 1276–77 (11th Cir.2005) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

Rager does not meet the standard for *Brady* or *Giglio*. First, both require that the State be aware of the evidence. Here, Petitioner argued the victim fabricated the story against him because she faced criminal exposure for having had sex with two minor boys and had "a strong motive (self-preservation) for her to portray [herself as] a victim." ECF Doc. 12 at 27. Rager argues the State was aware of the sexual history and did not turn that information over and also that during depositions the prior partners and the victim failed to answer questions about their sexual activities

together and the prosecutor argued that such testimony would be irrelevant. *Id.* at 27-28. Rager's argument is not supported by the record.

The victim turned eighteen (18) on June 22, 2007, and J.B. turned (16) on August 2, 2007. When the two began dating on May 13, 2007, she was 17 and he was 15. On August 2, 2007, he was 16 and she was 18. Sex between them after that point would not have been illegal under Florida law. *See* Fla. Stat. § 794.05 ("A person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree") and Fla. Stat. § 800.04 (limiting lewd and lascivious offenses to victims less than sixteen years old). Rager offers nothing more than mere speculation to support his argument that the two had sex before August 2, 2007, such that the victim would be motivated to fabricate a story of incest to cast herself a victim to reduce possible criminal liability.

Indeed, the state court opined, "the claim that the victim had a motive to lie about the conduct of the Defendant because of her alleged sexual relationship with [J.B.] before he turned 16 strains credulity because there is no indication that the victim ever actually faced the prospect of prosecution for such conduct." ECF Doc. 18-15 at 10. Thus, the state court was reasonable in concluding Rager failed to show that the State knew of any exculpatory evidence under *Brady* or false testimony under *Giglio* and was also reasonable in concluding Rager failed to show the evidence would have been material. Because Ground 7 has no merit, counsel's could

not have been ineffective for failing to raise a *Brady/Giglio* argument.  *See e.g.,* *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor or accurate statements by prosecutor about effect of potential sentence).

## III.  CONCLUSION

For the reasons stated above, Rager is not entitled to habeas relief on any of the grounds raised in the amended petition.  Thus, the undersigned recommends the petition be denied.  Additionally, the undersigned recommends Rager's motions for summary judgment on Grounds One and Three also be denied.

### A.   Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.  In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schirra v. Landorian*, 550 U.S. 465, 474 (2007).  The pertinent facts are fully developed in the record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development,"

*Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034 (2004).

## B.     Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the undersigned finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.    The clerk is directed to docket, UNDER SEAL, Exhibits B, E, F, H, M, R, T, and W as attachments to the docket entry for this Report and Recommendation.

Additionally, it is respectfully RECOMMENDED:

1.    That the Petitioner's motions requesting summary judgment in his favor, ECF Docs. 24 and 26, be DENIED.

2.    That the amended petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Rager*, 2010-CF-4281, in the First Judicial Circuit, in and for Escambia County, Florida, ECF Doc. 12, be DENIED without an evidentiary hearing.

3.    That a certificate of appealability be DENIED.

4.    That the clerk be directed to close the file.

At Pensacola, Florida, this 25th day of January, 2021.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation.  _Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control._  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  _See_ 11th Cir. Rule 3-1; 28 U.S.C. § 636.**